UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE: | CASE NO: |
|---|---|
| ASSET TRADER | 16-02794-5-DMW |
| DEBTOR | CHAPTER 7 |

## NOTICE OF MOTION

NOTICE is hereby given of the Motion for Approval of Compromise to compromise issues in this case, filed simultaneously herewith by James B. Angell ("Trustee"), Chapter 7 Trustee in the above-captioned case: and

Your rights may be affected. You should read these papers carefully and discuss them with your attorney, of you have on in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)

If you do not want the court to grant the Motion for Approval of Compromise, or if you want the court to consider your views on the motion, then on or before **June 5, 2017**, unless otherwise ordered, you or your attorney must file with the court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position, and a request for hearing.

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

| Marjorie K. Lynch, Esquire<br>Bankruptcy Administrator<br>434 Fayetteville Street, Suite 640<br>Raleigh, NC 27601 | James B. Angell<br>Chapter 7 Trustee<br>Post Office Box 12347<br>Raleigh, NC 27605 |
|---|---|
| Patricia H. Andrews<br>212 Sonoma Valley Drive<br>Cary, North Carolina 27518 | |

If a response and a request for hearing is filed in writing on or before the date set above, a hearing will be conducted on the motion at a date, time and place to be later set and all parties will be notified accordingly.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

DATED: May 11, 2017

         s/James B. Angell_____
James B. Angell
Howard, Stallings, From, Hutson, Atkins,
Angell & Davis, P.A.
State Bar No. 12844
P.O. Box 12347
Raleigh, NC 27605
Telephone: (919) 821-7700
Facsimile:  (919) 821-7703
jangell@hsfh.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE: | CASE NO: |
|---|---|
| ASSET TRADER | 16-02794-5-DMW |
| | CHAPTER 7 |
| DEBTOR | |

## <u>MOTION FOR APPROVAL OF COMPROMISE</u>

NOW COMES James B. Angell ("Trustee"), Chapter 7 Trustee in the above-captioned case, by and through counsel, and pursuant to Bankruptcy Rule 9019, moves this Court for entry of an Order granting him authority to compromise and settle issues with Patricia H. Andrews on the terms and conditions set forth on Exhibit A, attached hereto and incorporated herein by reference (the "Settlement Agreement"). In support of this Motion, the Trustee shows the Court the Following:

1. This matter is a core proceeding pursuant to 28 U.S.C. §157, and the Court has jurisdiction pursuant to 28 U.S.C. §§151, 157 and 1334. The Court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States Bankruptcy Court for the Eastern District of North Carolina.

2. The Movant, James B. Angell, is the Chapter 7 Trustee.

3. The controversy or dispute sought to be compromised is:

On September 22, 2016, Patricia H. Andrews filed Proof of Claim No. 23-1. Proof of Claim No. 23-1 asserts an unsecured claim in the amount of $273,845.73 based on a charitable gift annuity (the "Annuity"). A copy of a Charitable Gift Annuity Agreement made between The CGA Exchange (the "Debtor") and Andrews dated April 8, 2014 (the "Agreement") is attached hereto as Exhibit "A-1".

In addition to the Annuity, the Agreement evidences an agreement between the Debtor and Andrews with respect to a Life Policy on the life of Andrews in the face amount of $2,000,000 (the "Life Policy"). Under the terms of the Agreement, 100% ownership of the life insurance policy was transferred to Asset Trader (then known as "The CGA Exchange"), which was to be a 50% beneficiary together with Andrews's named beneficiaries. The Debtor was to pay all premiums of the Life Policy and be responsible to keep the Life Policy in good standing.

Although premiums on the Life Policy have not been paid currently, the premiums are not presently due. As the result of a transfer of the policy to a new insurance company, the premiums were suspended until the transfer is complete on the insurance company's books. Once the transfer is complete, an invoice will be presented to Asset Trader.

Andrews has had cancer but is currently in remission. She intends to leave her share of the proceeds of the Life Policy to her children.

4. The terms of the proposed compromise are as set forth on Exhibit A, attached hereto and generally described as:

a) Subject to the following provisions, the estate's interest in the Life Policy upon Andrews's death shall be one-half the policy proceeds. The remaining one-half interest of the policy proceeds shall be payable to Andrews's designated beneficiaries. The Trustee shall designate beneficiaries to the insurance company in accordance with this agreement.

b) Nothing herein shall require the Trustee to make any payment of any premiums due under the Life Policy.

c) The Trustee shall make efforts to sell the Life Policy and shall employ a party agreeable to Andrews to represent the estate in such sale. The estate shall have the sole power and authority to sell the Life Policy, subject to a reservation of rights by Andrews to object to any sale proposed by the Trustee. Any sale shall be made free and clear of any interests of Andrews or her designated beneficiaries in the Life Policy and the court shall enter appropriate orders to this effect upon request by the Trustee.

d) The Trustee shall move for approval of any sale of the Life Policy and shall provide notice of such motion to Andrews. Upon a sale of the policy, the proceeds of the Life Policy, net of costs of sale, including but not limited to any broker commissions, shall be paid in equal shares to the estate and to Andrews.

e) Andrews and the Trustee stipulate that the Agreement is not an executory contract as set out in 11 U.S.C. §365 and that nothing herein shall entitled Ms. Andrews to an administrative claim against the estate for failure to pay premiums on the Life Policy or otherwise.

f) Claim No. 23-1 shall be allowed as an unsecured claim in the amount of $324,787.13.

g) Except as provided herein, Claim No. 23-1 shall be disallowed.

h) Except as provided herein, Andrews hereby waives any claims she may have against the estate.

i) Each party shall bear the tax consequences of any amounts received due to its receipt of any death benefits or sales proceeds of the Life Policy.

5. The Trustee has analyzed the proposed compromise, taking into consideration the facts, the strengths and weaknesses of the parties' positions, the equities involved, the information and

evidence available to the Trustee to pursue the claims through trial and the costs of negotiation and litigation.

6. The Trustee believes the proposed settlement is in the best interest of the estate and its creditors and requests that the Court approve this Motion.

WHEREFORE, the Trustee prays for an Order approving and authorizing the settlement on the terms described in Exhibit A attached.

DATED: May 11, 2017

 s/James B. Angell
James B. Angell
Howard, Stallings, From, Hutson, Atkins,
Angell & Davis, P.A.
State Bar No. 12844
P.O. Box 12347
Raleigh, NC 27605
Telephone: (919) 821-7700
Facsimile:  (919) 821-7703
jangell@hsfh.com

EXHIBIT A



**HOWARD, STALLINGS, FROM, HUTSON, ATKINS, ANGELL & DAVIS, P.A.**

ATTORNEYS at LAW

Telephone: **919.821.7700** I Facsimile: **919.821.7703** I **PO Box 12347, Raleigh, NC 27605**

www.HowardStallings.com

E. Cader Howard
I. Allan From
Joseph H. Stallings
John N. Hutson
Beth F. Atkins
James B. Angell
B. Joan Davis
Brian E. Moore
Kathleen B. Coyle
Brooke L. Dalrymple
Nicholas C. Brown
Douglas D. Noreen
Robert H. Jessup
Elizabeth Buckley

Of Counsel
Edwin P. Friedberg
**(Deceased 2009)**

April 28, 2017

Patricia H. Andrews
212 Sonoma Valley Drive
Cary, North Carolina 27518

Re:    In re Asset Trader
Case No.: 16-02794-5-DMW, E.D.N.C. (Chapter 7)
Filing Date: May 26, 2016

Dear Ms. Andrews:

The purpose of this letter is to establish the terms of a settlement between Patricia H. Andrews ("Andrews") and James B. Angell, Chapter 7 Trustee ("Trustee") in the above referenced case. Notwithstanding the informality of this letter, the terms of the agreement set out herein are intended to be binding on the parties subject to Bankruptcy Court approval. My signature herein below indicates my consent to the settlement as Chapter 7 Trustee for Asset Trader in case no. 16-02794-5-DMW.

On September 22, 2016, Patricia H. Andrews filed Proof of Claim No. 23-1. Proof of Claim No. 23-1 asserts an unsecured claim in the amount of $273,845.73 based on a charitable gift annuity (the "Annuity"). A copy of a Charitable Gift Annuity Agreement made between The CGA Exchange (the "Debtor"[1]) and Andrews dated April 8, 2014 (the "Agreement") is attached hereto as Exhibit "A-1".

In addition to the Annuity, the Agreement evidences an agreement between the Debtor and Andrews with respect to a Life Policy on the life of Andrews in the face amount of $2,000,000 (the "Life Policy"). Under the terms of the Agreement, 100% ownership of the life insurance policy was transferred to Asset Trader (then known as "The CGA Exchange"), which was to be a 50% beneficiary together with Andrews's named beneficiaries. The Debtor was to pay all premiums of the Life Policy and be responsible to keep the Life Policy in good standing.

Although premiums on the Life Policy have not been paid currently, the premiums are not presently due. As the result of a transfer of the policy to a new insurance company, the premiums were suspended until the transfer is complete on the

**RALEIGH OFFICE**
5410 Trinity Road
Suite 210
Raleigh, NC 27607
Telephone: 919.821.7700
Facsimile: 919.821.7703
Toll Free: 800.822.4182

**OTHER LOCATIONS**
New Bern, NC
Morehead City, NC

---

[1] The CGA Exchange filed an Amendment to its Articles with the North Carolina Secretary of State to formally change its name to "Asset Trader".

April 28, 2017
Page 2

insurance company's books. Once the transfer is complete, an invoice will be presented to Asset Trader.

Andrews has had cancer but is currently in remission. She intends to leave her share of the proceeds of the Life Policy to her children.

This matter is resolved on the following terms and conditions:

1.      Subject to the following provisions, the estate's interest in the Life Policy upon Andrews's death shall be one-half the policy proceeds. The remaining one-half interest of the policy proceeds shall be payable to Andrews's designated beneficiaries. The Trustee shall designate beneficiaries to the insurance company in accordance with this agreement.

2.      Nothing herein shall require the Trustee to make any payment of any premiums due under the Life Policy.

3.      The Trustee shall make efforts to sell the Life Policy and shall employ a party agreeable to Andrews to represent the estate in such sale. The estate shall have the sole power and authority to sell the Life Policy, subject to a reservation of rights by Andrews to object to any sale proposed by the Trustee. Any sale shall be made free and clear of any interests of Andrews or her designated beneficiaries in the Life Policy and the court shall enter appropriate orders to this effect upon request by the Trustee.

4.      The Trustee shall move for approval of any sale of the Life Policy and shall provide notice of such motion to Andrews. Upon a sale of the policy, the proceeds of the Life Policy, net of costs of sale, including but not limited to any broker commissions, shall be paid in equal shares to the estate and to Andrews.

5.      Andrews and the Trustee stipulate that the Agreement is not an executory contract as set out in 11 U.S.C. §365 and that nothing herein shall entitled Ms. Andrews to an administrative claim against the estate for failure to pay premiums on the Life Policy or otherwise.

6.      Claim No. 23-1 shall be allowed as an unsecured claim in the amount of $324,787.13.

7.      Except as provided herein, Claim No. 23-1 shall be disallowed.

8.      Except as provided herein, Andrews hereby waives any claims she may have against the estate.

9.      Each party shall bear the tax consequences of any amounts received due to its receipt of any death benefits or sales proceeds of the Life Policy.

If the foregoing comports with your understanding of our agreement, kindly indicate your consent to the terms set forth herein in the space provided below, and deliver a copy of this correspondence to the undersigned by email, facsimile transmission and regular mail at facsimile number and address listed below.

Signing a copy of this correspondence shall constitute a legal, valid and binding obligation upon the parties hereto and shall be enforceable in accordance with its terms, subject to Bankruptcy Court approval.

April 28, 2017
Page 3

A facsimile signature shall suffice as an original signature. The Agreement shall inure to the benefit of each of the parties hereto and their respective successors and assigns and any successor of any of them.

This document constitutes the entire agreement of the parties and supersedes all prior or contemporaneous agreements, discussions, or representations, oral or written, relating the subject matter hereof, and by signing below, Andrews states that she has read each of the paragraphs hereof and that it understands the same and the legal obligations created hereby.

Please feel free to call me if you have any questions.

With best wishes we remain,

Very truly yours,
HOWARD, STALLINGS,
FROM & HUTSON, P.A.

James B. Angell
Chapter 7 Trustee

I Consent:

Patricia H. Andrews

# CHARITABLE GIFT ANNUITY AGREEMENT

## LIFETIME PAYOUT WITH *DEFERRED* GIFT ANNUITY for Donor: *PATRICIA H. ANDREWS*

THIS CHARITABLE GIFT ANNUITY AGREEMENT ("Agreement") is made between **PATRICIA H. ANDREWS**, ("Donor") having a Social Security Number of        and **THE CGA EXCHANGE**, a North Carolina, Non-Profit Public Charity within the meaning of Sections 501(c)(3) and 509(a) of the Internal Revenue Code of 1986, as amended and a registered, non-profit corporation doing business in the State of Indiana ("Charity"), on this **8th day of April, 2014**. The parties agree that this Agreement is issued in and governed by the laws of the State of Indiana and that this planned giving transaction was sourced from the state of Indiana as further referenced under Indiana Code Section 27-1-12.4-2.

The Donor's date of birth is        and has an actual age of 6_ (_____ _g_ _ _') for purposes of a Charitable Gift Annuity ("CGA"), as further described in Section 501(m)(5) of the Internal Revenue Code (26 USC Section 501(m)(5)), and Section 514(c)(5) of said Internal Revenue Code (26 USC Section 514(c)(5)), described in Section 501(m)(5) of said Internal Revenue Code (26 USC Section 501(m)(5)), and Section 514(c)(5) of said Internal Revenue Code (26 USC Section 514(c)(5)), with a **10 year elected deferral** to be paid over the **11.1 year** life expectancy, on or about the first day of each quarter (Jan/April/July/Oct), starting **October 1, 2024**. The Donor is a **Female** residing at **1009 Arrow Leaf Circle, Cary, NC 27519**, with Phone # **1-919-362-5277**.

This Agreement shall become binding and effective only after full execution of this Agreement by Donor and Charity, and the receipt and acceptance of the Property (defined below). Donor may elect to appoint an attorney-in-fact pursuant to a Limited Power of Attorney to execute this document and ancillary documents to it; deliver stock certificates or other property to Charity; make and receive payments hereunder; settle or compromise this Agreement; and otherwise do all things necessary to effect the purposes of this Agreement.

## WITNESSETH THAT:

1. Pursuant to this Agreement, Donor shall, irrevocably, simultaneously with the execution and delivery of this Agreement, assign, transfer and deliver to Charity as its own absolute property, outright and free of trust or debt, and without retaining any incidence of ownership whatsoever, each and all of the real and personal property set forth on the exhibit attached hereto, and incorporated herein, as **"EXHIBIT A"** (the "Property"), receipt of which is hereby acknowledged by Charity, subject, however, to all the terms and conditions set forth in this Agreement.

1



Donor intends to make a charitable gift to support the work of Charity. Charity hereby advises Donor that a CGA is not designed primarily as an investment, but rather as a charitable gift and part of a planned giving plan.

2. In consideration of the charitable gift of the Property to support the work of Charity, Charity hereby agrees to bind itself and its successors to pay Donor, at the address set forth above, an annual annuity (paid quarterly per "**EXHIBIT B**") in the sum of **$50,000.00 USD** ("Payment") as set forth below. The Payment shall be **DEFERRED** for a period of **10.0 years** from the date of the execution of this Agreement through **October 1, 2024** (the "Deferral Period") after the complete execution of this Agreement by all parties, and continuing for and during the Term set forth herein, with each subsequent payment scheduled on or about the **1st day of each quarter after the 10.0 years of deferment period paying $50,000.00 USD per year through life expectancy as the continuation of her life**. The Payment shall be paid by check or wire transfer of funds at the Donor's address above, or at the financial institution, and account therein, which is designated by Donor. If The Payment is made by wire transfer, then the amount of the payment shall be reduced by the actual cost to Charity of making the wire transfer. The Payment shall be paid based on the fair market value of the property transferred in exchange and a [deferred] term of **10 Years and 0 months** ("Term") until/starting **October 1, 2024**, all as set forth on **EXHIBIT B**. The agreed fair market value of the Property, pursuant to independent appraisal and/or determined cash [surrender] value of the gifted asset, as of the date of donation is **$273,845.73 USD** creating a calculated federal deduction of **$155,599.14 USD**. The Payment shall continue to Donor or their alternate designated beneficiary(ies) until the full amount of the annuity payment is paid out, so long as Charity receives at least 10% of the value of the Property transferred to it under this Agreement to be used for its charitable purposes. Donor's alternate beneficiaries, and their respective proportional shares are: To Be Determined ("Alternate Beneficiaries"). In the event of Donor's death prior to the expiration of the Term, the Alternate Beneficiaries, or their estate, shall receive 90% the remaining Payments, per the date and term, in the proportion designated by Donor; however the payments shall be shown on **EXHIBIT B**.

3. The obligation of Charity to pay the annuity shall terminate with **the Donor's Life Expectancy** as set forth on **EXHIBIT B**.

4. Charity shall use the residuum under this Agreement to further the general charitable purposes of Charity, and to increase its endowment to further its charitable purposes (operations, education, etc.). The residuum gift shall be at least **$27,384.57 USD** (+ **$27,384.57** USD for administration fees over the life of the CGA Agreement) which

2



*represents at least 10% of the value of the Property at the time of this Agreement. Donor will also donate her*

*AVIVA life insurance policy having a death benefit of $2,000,000 of which the charity will pay through a value of*

*50% to the donor's beneficiaries. The Charity shall pay all premiums and shall be fully responsible for keeping the*

*policy in good standing.*

5.  The gift annuity provided hereunder may not be assigned by the Charity, except to another public charity within the meaning of Sections 501(c)(3) and 509(a) of the Internal Revenue Code of 1986, as amended.

6.  Charitable Gift Annuities are exempt from regulation by the State of Indiana and its Department of Insurance. Payments under this Agreement are not protected or otherwise guaranteed by any State or Federal government agency, or insurance guaranty association; it is not FDIC insured; it is not bank guaranteed; it is not registered with the SEC or FINRA; it is not deemed a deposit and may lose value; it is not a condition to any banking service or activity; it is not a security or secured transaction of any type. The payments made under a CGA, per IRS requirement, are backed solely by the full faith and credit of the organization which issues the annuity and are not insured or guaranteed by an insurance company. In order to fulfill its obligations herein, Donor agrees that Charity may, in its sole and absolute discretion, make investments with the Property, or its proceeds, through any investment strategy of its choosing, including, but not limited to making investments in cash, money market funds, mutual funds, public or private stocks, bonds, Treasury bills, private placements, notes, mortgages, deeds of trust, real estate, hedge funds, private equity groups, loans, commodities, currencies and/or investments through and by licensed life or viatic settlement providers.

7.  In the event Donor has made a misstatement of Donor's age: (a) the opening paragraph of this Agreement shall be amended to provide the correct age of Donor, (b) Paragraph 2 of this Agreement shall be amended to provide the correct amounts and percentages set forth in Paragraph 2 based upon the corrected age, and, (c) in the case of a misstatement that is discovered after the first payment required pursuant to Paragraph 2 hereof is made: (i) if the correct age of Donor is higher than Donor's stated age in the opening paragraph of this Agreement, then Charity shall, within ten (10) days of discovering such misstatement, pay Donor, in cash or other readily available funds, an amount equal to: (x) the amount Donor would have received pursuant to this Agreement if Donor's correct age was utilized to calculate Charity's payment obligations pursuant to Paragraph 2 hereof, minus (y) the amount paid to Donor pursuant to this Agreement; provided, however, Donor shall be permitted to waive the right to such repayment if written notice of such waiver is provided to Charity, and (ii) if the correct

3



age of Donor is lower than Donor's stated age in the opening paragraph of this Agreement, then Donor shall, within ten (10) days of discovering such misstatement by either party, pay Charity, in cash or other readily available funds, an amount equal to: (x) the amount paid to Donor pursuant to this Agreement, minus (y) the amount Donor would have received pursuant to this Agreement if Donor's correct age was utilized to calculate Charity's payment obligations pursuant to Paragraph 2 hereof.

8. This Agreement shall be irrevocable and the Donor hereby waives the right, if any, to revoke their interest as an annuitant.

9. If (a) any party to this Agreement materially breaches any of its obligations under this Agreement or (b) any representation or warranty of a party made in this Agreement is determined to be materially inaccurate or untrue, then the other party shall have any and all rights and remedies available to it at law or in equity on account of such breach, inaccuracy or untruth, including the right to seek specific performance. In addition to the foregoing, any action at law or suit in equity (including administrative claims) to enforce this Agreement or the rights of the parties under this Agreement, the substantially prevailing party in such action or suit shall be entitled to recover its costs and attorneys' fees from the non-prevailing party.

10. Charity makes the following representations and warranties to the Donor:

      (a)    Charity is a non-profit corporation duly organized, validly existing and in good standing under the laws of the State of North Carolina, is duly registered or qualified as a foreign corporation in the State of Indiana, and has all requisite power and authority to own, lease and operate its properties (real, personal and mixed, and whether tangible or intangible), and to carry on its business as now being conducted.

      (b)    Charity has the absolute and unrestricted right, power, authority and capacity to execute and deliver this Agreement and perform its obligations under this Agreement. The execution and delivery of this Agreement by Charity and the performance by Charity of its obligations under this Agreement have been duly authorized by all necessary corporate action on the part of the Charity. This Agreement has been duly executed and delivered by Charity and (assuming the due authorization, execution and delivery by the Donor) constitutes the legal, valid and binding obligation of Charity, enforceable against Charity in accordance with its terms, except as enforceability thereof may be limited by its terms or applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting enforcement of creditors' rights and the exercise of judicial discretion in accordance with general principles of equity.

4



(c)    The execution and delivery of this Agreement by Charity and Charity's performance of its

obligations under this Agreement will not (i) violate any existing provision of any law or violate any existing term

or provision of any order, writ, judgment, injunction or decree of any court, governmental department, commission,

board, agency or instrumentality applicable to Charity or its properties or assets, (ii) conflict with or violate any of

the terms, conditions or provisions of its Certificate or Articles of Incorporation or Bylaws, (iii) violate, result in any

breach of, or constitute a default (or give rise to any right of termination, cancellation or acceleration) under any

contract, agreement, indenture, mortgage or deed of trust, security agreement, license, instrument or obligation to

which Charity is a party or by which Charity is bound; or (iv) result in the creation or imposition of any lien,

encumbrance or claim of any third party upon Charity or any of its properties or assets.

(d)    No consent, approval or authorization of, or designation, declaration or filing with, any

individual or legal or commercial entity, or any foreign, federal, state or local government, political subdivision or

governmental or regulatory authority, agency, board, bureau, commission, instrumentality or court or quasi-

governmental authority (a "Governmental Agency") having jurisdiction over Charity (which has not otherwise been

obtained, made or filed) is required on the part of Charity in connection with its execution or delivery of this

Agreement or the performance by Charity of its obligations under this Agreement.

(e)    Charity is not a party to any pending or, to the best of Charity's knowledge, threatened

litigation or proceeding the outcome of which is likely to have a material adverse effect on Charity's ability to

perform its obligations under this Agreement, and Charity has not received notice of a violation of any applicable

law, ordinance, regulation, rule, decree, award, writ, injunction, judgment or order of any Government Agency, the

violation of which is likely to have a material adverse effect on Charity's ability to perform its obligations under this

Agreement.

(f)    Charity is solvent and knows of no event, condition or circumstance which, with the giving

of notice or the passage of time, or both, would cause Charity to be unable to make the payments contemplated by

this Agreement, as and when required hereby. The payments contemplated by this Agreement are not undertaken

with the intent to hinder, delay or defraud any of Charity's creditors.

(g)    No representation or warranty by Charity contained in this Agreement, nor any document

or certificate furnished to Donor by or for Charity pursuant to this Agreement, contains any untrue statement of a

material fact or omits to state a material fact necessary to make the statements contained in such warranty or



11. Donor makes the following representations and warranties to Charity:

        (a)    Donor is an individual residing in the state of **North Carolina** and has all requisite power and authority to donate, own, lease and operate its properties (real, personal and mixed, and whether tangible or intangible), and to carry on its business as now being conducted, and is the owner of the Property set forth herein.

        (b)    Donor has the absolute and unrestricted right, power, authority and capacity to execute and deliver this Agreement and perform its obligations under this Agreement, and is not acting under duress, coercion or compulsion of any kind. The execution and delivery of this Agreement by Donor and the performance by Donor of its obligations under this Agreement have been duly authorized by all necessary personal and corporate action on the part of Donor, and Donor's action represents their free and voluntary act. This Agreement has been duly executed and delivered by Donor and (assuming the due authorization, execution and delivery by the Charity) constitutes the legal, valid and binding obligation of Donor, enforceable against Donor in accordance with its terms, except as enforceability thereof may be limited by its terms or applicable bankruptcy, insolvency, reorganization, moratorium or other laws of general application relating to or affecting enforcement of creditors' rights and the exercise of judicial discretion in accordance with general principles of equity.

        (c)    The execution and delivery of this Agreement by Donor and Donor's performance of its obligations under this Agreement will not (i) violate any existing provision of any law or violate any existing term or provision of any order, writ, judgment, injunction or decree of any court, governmental department, commission, board, agency or instrumentality applicable to Donor or its properties or assets, (ii) conflict with or violate any of the terms, conditions or provisions of Donor's Property and its Certificate or Articles of Incorporation or Bylaws, (iii) violate, result in any breach of, or constitute a default (or give rise to any right of termination, cancellation or acceleration) under any contract, agreement, indenture, mortgage or deed of trust, security agreement, license, instrument or obligation to which Donor is a party or by which Donor is bound; or (iv) result in the creation or imposition of any lien, encumbrance or claim of any third party upon Donor or any of its properties or assets.

        (d)    No consent, approval or authorization of, or designation, declaration or filing with, any individual or legal or commercial entity, or any foreign, federal, state or local government, political subdivision or governmental or regulatory authority, agency, board, bureau, commission, instrumentality or court or quasi-

6



governmental authority (a "Governmental Agency") having jurisdiction over Donor (which has not otherwise been obtained, made or filed) is required on the part of Donor in connection with its execution or delivery of this Agreement or the performance by Donor of its obligations under this Agreement.

(e)     Donor is not a party to any pending or, to the best of Donor's knowledge, threatened litigation or proceeding the outcome of which is likely to have a material adverse effect on Donor's ability to perform its obligations under this Agreement, and Donor has not received notice of a violation of any applicable law, ordinance, regulation, rule, decree, award, writ, injunction, judgment or order of any Government Agency, the violation of which is likely to have a material adverse effect on Donor's ability to perform its obligations under this Agreement.

(f)     Donor is solvent and knows of no event, condition or circumstance which, with the giving of notice or the passage of time, or both, would cause Donor to be unable to perform its obligations or receive the payments contemplated by this Agreement, as and when required hereby, or performs Donor's obligations under this Agreement. The payments contemplated by this Agreement are not undertaken with the intent to hinder, delay or defraud any of Donor's creditors.

(g)     No representation or warranty by Donor contained in this Agreement, nor any document or certificate furnished to Charity or its agents or representatives (including but not limited to appraisers, lenders, underwriters, accountants or potential purchasers of the Property and their respective legal and professional advisors and agents) by or for Donor pursuant to this Agreement, contains any untrue statement of a material fact or omits to state a material fact necessary to make the statements contained in such warranty or representation, or document or certificate, in light of the circumstances under which they were made, not misleading.

12. This Agreement may be executed in any number of counterparts, each a copy of which shall serve as an original for all purposes, but all copies shall constitute but one and the same Agreement.

13. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction or administrative agency, then the other provisions of this Agreement will remain in full force and effect unless the Agreement would thereby fail of its essential purpose. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.



7

14. This Agreement shall be binding upon and shall inure to the benefit of the parties and their permitted successors and assigns.

15. The parties to this Agreement agree that they are doing business in the State of Indiana and agree to submit to personal jurisdiction and venue in the Circuit and Superior Courts of Marion County, Indiana.

16. The Parties understand and acknowledge the significance and consequences of signing this Agreement and have had a full opportunity to discuss, and/or have discussed, the Agreement with their attorneys, accountants, tax and other financial advisors or hereby waive the same.  Donor represents and agrees that it is not relying on Charity or any of its directors, officers, attorneys, agents, employees, independent contractors or shareholders for any legal, tax, accounting, estate planning or financial advice, and that there was no disparity in bargaining power in the negotiation and/or execution of the Agreement.

17. Neither this Agreement nor any provision in this Agreement shall be construed for or against any Party because this Agreement as a whole, or any provision thereof, was requested or drafted by such Party.  Neither this Agreement nor any provision in this Agreement nor evidence of any negotiations in connection with it or them shall be offered or received in evidence or used in any way in any action or proceeding between the Parties except to enforce the terms and provisions hereof.

17. Charity agrees to indemnify and hold Donor harmless from federal tax losses, fees, penalties, or interest including the legal and accounting cost to defend such claims and expenses, if it is determined that the calculations or deductions represented in this Agreement or its Exhibits are not accurate resulting in a claim or loss against Donor by the government of the United States or its agencies.  Charity shall be released from this indemnity provision in the event of a breach of this Agreement or any of its provisions, by Donor, including but not limited to the representations and warranties of Donor contained herein.


IN WITNESS WHEREOF, each of the parties have executed this Agreement on the date first written above.


*Signature page to follow. The remainder of this page was intentionally left blank.*

**OFFICIAL SIGNATURE PAGE TO THE AGREEMENT**

**DONOR:**

_Patricia H. Andrews_
Patricia H. Andrews

## ACKNOWLEDGMENT

STATE OF NORTH CAROLINA )
                          ) SS:
COUNTY OF Wake            )

      Before me a Notary Public in and for said County and State personally appeared **Patricia H. Andrews** and executed the foregoing Charitable Gift Annuity ("CGA"), and who, having been duly sworn, stated that any representations therein contained are true.

      Witness my hand and Notarial Seal, this 8th day of **April, 2014.**

By: _Michelle Parrish Benson_

Printed: _Michelle Parrish Benson_, Notary Public

County of Residence: _Wake_

My Commission Expires: _5/5/2015_

MICHELLE PARRISH BENSON
Notary Public
Wake County
My Commission Expires
5-5-15
NORTH CAROLINA

**THE CGA EXCHANGE**

By: _____

Printed:     Tony March, J.D., MBA

Title:       Chairman & CEO

9



I, Michelle Parrish Benson, a Notary Public of Wake County, North Carolina, certify that

_Patricia H. Andrean_____ personally appeared before me

this 21st of March 2011.

_Michelle Parrish Benson_____

Notary Public

My Commission Expires ___5-5-2015_____

## EXHIBIT A

Asset #1: AVIVA Life and Annuity Company / Non-Qualified Annuity Policy#        . Cash Surrender Value: $280,000.00 USD. Transferring 100% for The CGA Exchange to be the Owner and Beneficiary.

*$273,845.73  A—  PdA.*

Asset#2: AVIVA Life and Annuity Company / Non-Qualified Annuity Policy#        . Annual Premium $39,658.00 USD. Death Benefit $2,000,000 USD. Transferring 100% ownership for The CGA Exchange to be the Owner and 50% Beneficiary together with the donor's named benefactors. The CGA Exchange will pay all premiums of the Life Policy and be responsible to keep the Life Policy in good standing.

**Total Net Charitable Gift/ "Exchange": (calculating Total Gross Gift of $280,000.00 USD surrender values – less 10% min required charitable gift):  $252,000.00 USD**





## "EXHIBIT B"

## to The Charitable Gift Annuity Agreement

for

### Donor | Patricia H. Andrews
1009 Arrow Leaf Circle
Cary, NC 27519

Tuesday | April 8, 2014
Prepared by: **THE CGA EXCHANGE**
www.GiftAnnuity.org

Legal Counsel to The CGA Exchange;



**THE CGA EXCHANGE**
3206 Heritage Trade Dr., Suite 104
Wake Forest, NC 27587
T: 919-249-7939 | Info@GiftAnnuity.org

Prepared for:
Donor | **Patricia H. Andrews**
**Tuesday | April 8, 2014**
www.GiftAnnuity.org

## Summary of Benefits

## LT Gain Assets

*8.6% Deferred Gift Annuity*

### ASSUMPTIONS:

| | |
|---|---|
| Annuitant | \|      67 |
| Date of Gift | 4/8/2014 |
| Age at Date of First Payment | [10/1/2024] 77 |
| | |
| Principal Donated | $273,845.73 |
| Cost Basis of Property | $273,845.73 |
| | |
| Payout Rate from ACGA 2012 Table | 8.6% |
| | |
| Payment Schedule | quarterly |

### BENEFITS:

| | |
|---|---|
| **Charitable Deduction** | **$155,599.14** |
| **Annuity** | **$50,000.00** |
| | |
| Tax-free Portion | $21,500.00 |
| Ordinary Income | $28,500.00 |

After 11.1 years from the year the payments begin, the entire annuity becomes ordinary income.

The charitable deduction displayed above is based on the highest IRS discount rate within the 90 days prior to gift. To take your deduction based on this rate, you must specify it in an election statement that you file with your tax return.

Basic Gift Illustrations
Prepared by: THE CGA EXCHANGE                    IRS Discount Rate elected is **2.40%** for the month of **Feb**
These calculations are for illustration & educational purposes only and should not be considered legal, accounting, or other professional advice. Your actual benefits may vary depending on several factors, including the timing of your gift.



**THE CGA EXCHANGE**
3206 Heritage Trade Dr., Suite 104
Wake Forest, NC 27587
T: 919-249-7939 | Info@GiftAnnuity.org

Prepared for:
Donor | **Patricia H. Andrews**
**Tuesday | April 8, 2014**
www.GiftAnnuity.org

## Taxation of Gift Annuity Payments          LT Gain Assets

### *5.1% Deferred Gift Annuity*

**ASSUMPTIONS:**

| | |
|---|---:|
| Annuitant | 67 |
| Date of Gift | 4/8/2014 |
| Age at Date of First Payment | [10/1/2024] 77 |
| | |
| Principal Donated | $273,845.73 |
| Cost Basis of Property | $273,845.73 |
| | |
| Payout Rate from ACGA 2012 Table | 8.6% |
| | |
| Payment Schedule | quarterly |

**CALCULATIONS:**

| | |
|---|---:|
| Charitable Deduction | $155,599.14 |
| | |
| Number of Payments in First Year | 1 |
| | |
| Annuity | $50,000.00 |
| Quarterly Payment | $12,500.00 |

**BREAKDOWN OF ANNUITY:**

| | Tax-free Portion | Ordinary Income | Total Annuity |
|---|---:|---:|---:|
| 2024 to 2024 | 5,375.00 | 7,125.00 | 12,500.00 |
| 2025 to 2034 | 21,500.00 | 28,500.00 | 50,000.00 |
| 2035 to 2035 | 16,125.00 | 21,375.00 | 37,500.00 |
| 2036 onward | 0.00 | 50,000.00 | 50,000.00 |

After 11.1 years from the year the payments begin, the entire annuity becomes ordinary income.

The charitable deduction displayed above is based on the highest IRS discount rate within the 90 days prior to gift. To take your deduction based on this rate, you must specify it in an election statement that you file with your tax return.



Basic Gift Illustrations
Prepared by: THE CGA EXCHANGE                    IRS Discount Rate elected is **2.40%** for the month of **Feb**
These calculations are for illustration & educational purposes only and should not be considered legal, accounting, or other professional advice. Your actual benefits may vary depending on several factors, including the timing of your gift.

| THE CGA EXCHANGE | | | | Prepared for: |
|---|---|---|---|---|
| 3206 Heritage Trade Dr., Suite 104 | | | | Donor \| **Patricia H. Andrews** |
| Wake Forest, NC 27587 | | | | **Tuesday \| April 8, 2014** |
| T: 919-249-7939 \| Info@GiftAnnuity.org | | | | www.GiftAnnuity.org |

## Actuarial Calculations

## LT Gain Assets

*8.6%\* Deferred Gift Annuity (Shown without adjustment)*

**ASSUMPTIONS:**

| [1] | [a] | Annuitant | . 67 |
|---|---|---|---|
| | | Date of Gift | 4/8/2014 |
| | [b] | Age at Annuity Starting Date | [7/2/2024] 77 |
| | [c] | Age at Date of First Payment | [10/1/2024] 77 |
| [2] | | Principal Donated | $273,845.73 |
| [3] | | Cost Basis of Property | $273,845.73 |
| [4] | | Payout Rate from ACGA2012 Table | 8.6% |
| [5] | | Payment Schedule | quarterly |
| [6] | | Discount Rate under IRC Section 7520(a) for 2/2014 | 2.4% |

**CALCULATIONS:**

| [7] | | Annuity ([2] x [4]) | $23,550.76 |
|---|---|---|---|
| [8] | [a] | Value of $1 for age on [1b], rate on [6] (Table S in IRS Publication 1457 (5-2009)) | 8.4349 |
| | [b] | Adjustment for schedule on [5], rate on [6] (Table K in IRS Publication 1457 (5-2009)) | 1.0090 |
| | [c] | Adj. Value of $1 ([8a] x [8b]) | 8.5108 |
| | [d] | Deferred Discount Factor for [1] and [6] | 0.589946 |
| | [e] | Value of $1 Deferred ([8c] x [8d]) | 5.0209 |
| [9] | | Investment in Contract ([7] x [8e]) | $118,246.59 |
| [10] | | **CHARITABLE DEDUCTION ([2] - [9])** | **$155,599.14** |
| [11] | [a] | Expected Return for age on [1b] (Table V in Reg. 1.72-9) | 11.2 |
| | [b] | Adjustment for payment schedule on [5] (Reg. 1.72-5(a)(2)(i)) | -0.1 |
| | [c] | Expected Return per $1 ([11a] + [11b]) | 11.1 |
| [12] | | Expected Return ([7] x [11c]) | $261,413.44 |
| [13] | | Exclusion Ratio ([9] / [12]) (Regs. 1.72-4, 1.1011-2(c) Example (8)) | 0.452 |
| [14] | | Unadjusted Annuity Rate for age on [1b] | 6.2% |
| [15] | | Years of Deferral from 4/8/2014 to 7/1/2024 | 10.2342 |
| [16] | | Deferred Interest Factor (1.0325 ^ 10.2342) | 1.387247 |
| [17] | | Deferred Annuity Rate ([14] x [16] rounded to nearest 0.1%) | 8.6% |

Basic Gift Illustrations

Prepared by: THE CGA EXCHANGE      IRS Discount Rate elected is **2.40%** for the month of **Feb**

These calculations are for illustration & educational purposes only and should not be considered legal, accounting, or other professional advice. Your actual benefits may vary depending on several factors, including the timing of your gift.



UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| IN RE: | CASE NO: |
|---|---|
| ASSET TRADER | 16-02794-5-DMW |
| DEBTOR | CHAPTER 7 |

CERTIFICATE OF SERVICE

I, Jennifer L. McInnes, of the law firm Howard, Stallings, From, Hutson, Atkins, Angell & Davis, P.A., certify:

That I am, and at all times hereinafter mentioned was, more than eighteen (18) years of age:

That on May 11, 2017, the foregoing MOTION TO APPROVE COMPROMISE AND NOTICE OF MOTION was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the parties listed below. I further certify that I have mailed the document to the non CM/ECF participants as set out below by first class mail.

I certify under penalty of perjury that the foregoing is true and correct.

DATE: May 11, 2017

  s/Jennifer L. McInnes
Jennifer L. McInnes, Paralegal
P.O. Box 12347
Raleigh, NC 27605

| | |
|---|---|
| Marjorie K. Lynch, Esquire<br>Bankruptcy Administrator<br>*Served via cm/ecf and by email to*<br>Brian_Behr@nceba.uscourts.gov and<br>Rick_Hinson@nceba.uscourts.gov | Asset Trader<br>c/o James B. Angell, Trustee |
| Patricia H. Andrews<br>212 Sonoma Valley Drive<br>Cary, North Carolina 27518 | See attached matrix |

Pamela P. Keenan
Kirschbaum, Nanney, Keenan & Griffin, P.A
*Served via cm/ecf*

Charles M. Ivey, III
Ivey, McClellan, Gatton & Siegmund, LLP
*Served via cm/ecf*

Brian D. Darer
Parker Poe Adams & Bernstein LLP
*Served via cm/ecf*

Jill C. Walters
Poyner Spruill
*Served via cm/ecf*

Paul A. Fanning
Ward and Smith, P.A.
*Served via cm/ecf*

J. Michael Fields
Ward and Smith, P.A.
*Served via cm/ecf*

Leonard Williams
IRS Exempt Organizations Division
409 Koger Boulevard, Suite 102
Mail Stop 39
Greensboro, NC 27407

Caren D. Enloe
Smith Debnam Narron Drake
Saintsing & Myers, LLP
*Served via cm/ecf*

James M. Hash
Everett Gaskins Hancock LLP
*Served via cm/ecf*

Holmes P. Harden
Williams Mullen
*Served via cm/ecf*

Barry P. Gruher, Esq.
Genovese Joblove & Battista, P.A.
*Served via cm/ecf*

J.M. Cook
J.M. Cook, P.A.
*Served via cm/ecf*