UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| In re:<br><br>Asset Trader<br><br>Debtor | Case No. 16-02794-5-DMW<br><br>Chapter 7 |
| James B. Angell, Chapter 7 Trustee for Asset Trader,<br><br>Plaintiff,<br><br>v.<br><br>Cheshire Parker Schneider & Bryan, PLLC and Batch, Poore & Williams, PC,<br><br>Defendants. | Adversary Proceeding No. |

**COMPLAINT FOR AVOIDANCE AND RECOVERY OF**
**FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 548 AND 550**

NOW COMES James B. Angell, Chapter 7 Trustee for Asset Trader ("Plaintiff" or "Trustee"), complaining of Cheshire Parker Schneider & Bryan, PLLC ("Cheshire Law Firm") and Batch, Poore & Williams, PC ("Batch Law Firm"), and alleges and says as follows:

**PARTIES AND JURISDICTION**

1. On May 26, 2016 (the "Petition Date"), Asset Trader ("Asset Trader" or "Debtor") filed a Chapter 11 bankruptcy petition in this Court.

2. On or about September 14, 2016 (the "Conversion Date"), the Debtor's case was converted to one under Chapter 7.

3. Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's bankruptcy case by order of the Court dated September 14, 2016.

4. Asset Trader is a non-profit corporation organized and existing under the laws of the State of North Carolina.

5. On information and belief, the Cheshire Law Firm is a professional limited liability company organized and existing under the laws of the State of North Carolina.

6. On information and belief, the Batch Law Firm is a professional corporation organized and existing under the laws of the State of North Carolina.

7. The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

9. This proceeding is a statutorily core proceeding under 28 U.S.C. §157(b)(2)(A),(F),(H).

10. This Court has constitutional authority to hear and finally determine this proceeding. In the event the Court does not otherwise have constitutional authority, the Trustee consents to this Court's jurisdiction to finally determine this matter.

## BACKGROUND

11. At all times relevant to this action, Anthony Wayne March ("Tony March") was the President and Chief Executive Officer and a director of Asset Trader.

12. In 2013, Asset Trader was informed by the Internal Revenue Service (the "IRS") that it was determined to be exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code ("IRC").

13. Asset Trader obtained its determination letter from the IRS based on its contention that its purpose was to provide education regarding strategies for disposing of assets which, if sold, would result in substantial income taxes.

14. Beginning prior to 2014, Asset Trader used its tax exempt status to encourage "donors" to contribute property to it in exchange for a charitable deduction and a charitable gift annuity.

15. As a result of its tax exempt status under IRC section 501(c)(3), Asset Trader was permitted by law to receive tax exempt contributions, which in turn allowed the donors of contributions to deduct the amount of cash or the fair market value of property contributed on their personal income tax returns.

16. Despite having raised millions of dollars in tax deductible contributions for its educational purposes, the Debtor did not conduct any educational classes for anyone other than its employees.

17. Asset Trader paid expenses to or on behalf of Tony March, including but not limited to housing, utilities, use of luxury and classic automobiles, meals and food expenses. Asset Trader also used contribution funds to purchase a yacht and a jet which were sometimes used by Tony March and his relatives.

18. In addition, Asset Trader made payments to The MineralMeds Foundation, Inc. for the purpose of paying down note obligations or other obligations due to prior clients of Tony March or an entity controlled by Tony March.

## THE MARCH FAMILY LITIGATION

19. In and around 2014 and 2015, Tony March was involved in a series of domestic litigation matters involving his separated spouse, Lori P. March, their children, and Tony March's mother, Maxine March (the "March Family Litigation").

<u>The Batch Law Firm</u>

20. In 2014 and 2015, the Batch Law Firm rendered legal services to Tony March, including the following matters:

- Rule 60 Motion to Set Aside Domestic Violence Protective Order
- Breach of Contract (Wake Co. 14 CV 006864)
- Motion for Emergency Custody (Wake Co. 14 CVD 02462)
- Defense of Motion for Emergency Custody (14 CVD 02462)
- Motion to Change Venue (Dare Co.: 07 CVD 241)
- Custody (Grandparent Visitation)
- Custody (Temporary Custody Hearings)
- Child Support, Alimony, Equitable Distribution Motions for Contempt (Wake Co.: 14 CVD 01723)
- Misdemeanor Criminal Violation of Domestic Violence Protective Order (Orange Co.: 14 CR 50392)
- Traffic Violations
- Defense of Motions for Attorney Fees
- Defense of Motions for Contempt and Orders to Show Cause (Wake Co.: 14 CVD 2462, 14 CVD 9630)

21. The issues involved in the March Family Litigation included but were not necessarily limited to child abuse allegations, the involvement of Wake County Child Protective Services, the intervention of grandparents as a third party, the use and retention of the children's therapists as expert witnesses, and contempt hearings for failing to pay support and equitable distribution payments.

22. The Batch Law Firm did not provide legal services to Asset Trader in 2014 or 2015.

23. During the two-year period preceding the Petition Date, Asset Trader made certain payments to the Batch Law Firm (the "Batch Transfers") including but not limited to the following:

| Account | Date | Amount | Type |
|---|---|---|---|
| P6262 | 5/5/2014 | $4,000.00 | 1907 |
| WF3618 | 6/11/2014 | $1,000.20 | Debit |
| WF3618 | 6/18/2014 | $7,000.00 | 1026 |
| WF3618 | 7/11/2014 | $4,000.00 | Debit |
| WF3618 | 7/31/2014 | $18,000.00 | 1063 |
| WF3618 | 9/8/2014 | $6,120.96 | 1072 |
| WF3618 | 11/14/2014 | $5,000.00 | 1085 |
| WF3618 | 12/11/2014 | $5,000.00 | 1037 |
| WF3618 | 12/18/2014 | $5,000.00 | Debit |
| WF3618 | 1/27/2015 | $10,000.00 | 5011 |
| Credit Card | 4/24/2015 | $ 4,500.00 | |
| WF3618 | 5/14/2015 | $4,123.59 | Debit |
| Credit Card | 6/16/2015 | $2,942.59 | |
| WF3618 | 6/29/2015 | $5,125.00 | Debit |
| Credit Card | 8/10/2015 | $5,000.00 | |
| | Total: | $86,937.34 | |

### The Cheshire Law Firm

24. In or around 2014 and 2015, the Cheshire Law Firm rendered legal services to Maxine March in connection with the March Family Litigation.

25. Among other things, the Cheshire Law Firm represented Maxine March in a custody dispute in Wake County, 14 CVD 02462, in which Maxine March was an intervening defendant.

26. The Cheshire Law Firm did not provide legal services to Asset Trader in 2014 or 2015.

27. During the two-year period preceding the Petition Date, Asset Trader made certain payments to the Cheshire Law Firm (the "Cheshire Transfers") including but not limited to the following:

| Account | Date | Amount | Type |
|---|---|---|---|
| WF3618 | 8/29/2014 | $7,500.00 | 1015 |
| WF3618 | 12/15/2014 | $3,500.00 | 1108 |
| Credit Card | 2/04/2015 | $1,311.25 | |
| Credit Card | 12/14/2015 | $ 500.00 | |
| Credit Card | 12/14/2015 | $1,500.00 | |
| Credit Card | 12/18/2015 | $ 500.00 | |
| | Total: | $14,811.25 | |

<u>CLAIM FOR RELIEF</u>
11 U.S.C. §§ 548, 550; N.C. Gen. Stat § 39-23.1 *et seq.*
(Fraudulent Transfers)

28. Paragraphs 1 through 27 are incorporated herein by reference.

29. The Batch Transfers and Cheshire Transfers (hereinafter, the "Transfers") constitute the transfer of an interest of the Debtor in property. The Debtor transferred funds from its bank account to the Defendant.

30. The Debtor made the Transfers with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted on or after the date that such transfer was made. The Debtor made such Transfers without sufficient assets or reserves to meet its obligations to make payments on its charitable gift annuity obligations. The Debtor intentionally diluted its assets in order to cover Tony March's personal debts and to pay for his personal expenses.

31. Asset Trader intended to defraud donors by misleading them regarding Asset Trader's "charitable" activities and its ability to fund deferred annuities in order to procure their donations. Asset Trader received funds or property from donors in exchange for an unsecured promise to pay a stream of payments to each donor after a deferral period. The deferral period typically ranged from seven to ten years. The donors received a tax deductible contribution in the amount of the difference between the fair market value of the property contributed and the fair market value of the annuity determined on the date of the contribution.

32. Rather than investing donated contributions in investment grade assets that would appreciate over time, Asset Trader invested in speculative investments, such as gold and stock in Twitter and in depreciable property that was in fact used by its principal and his relatives. Asset Trader also used contributions and donations to pay for the personal expenses of its officers and directors who were also the close friends or relatives of Tony March.

33. Among other things, Tony March used donor monies to fund his messy child custody and separation legal fees and those of his mother. Asset Trader did not disclose to the IRS, donors or annuitants that contributions would be used for the purpose of funding an officer's personal legal fees and not for any educational purposes.

34. The Transfers were part of the Debtor's scheme to defraud the IRS and creditors of Asset Trader. Specifically, Tony March engaged in fraudulent and deceitful conduct by abusing Asset Trader's section 501(c)(3) status in order to receive donations, contributions and other funds which he used to fund his personal expenses and those of his relatives, including but not limited to Maxine March.

35. Among other things, Tony March caused Asset Trader to purchase luxury and classic cars, including but not limited to a Ferrari, a Dodge Viper, and a Jaguar, and other luxury items of dubious investment value, including a yacht and a jet, which he and/or his relatives used for their personal benefit.

36. Despite having raised millions of dollars in tax deductible contributions for its educational purposes, from its inception through the Petition Date, the Debtor did not conduct any educational classes for anyone other than its employees. It developed a facility for teaching classes and purportedly developed training software, neither of which was ever used.

37. Asset Trader did not receive reasonably equivalent value in exchange for the Transfers. The Transfers constituted payments for legal fees of Tony March or his mother, Maxine March, related to Tony March's contentious domestic litigation and custody disputes with his separated spouse, Lori March. Asset Trader was not a named party and did not otherwise have an interest in the above-described family law disputes and state court domestic litigation involving Tony March, Lori March and Maxine March.

38. Asset Trader was insolvent at the time of each of the Transfers. On information and belief, the value of the company's assets was less than the amount of its liabilities at the time of the Transfers. Although a company balance sheet available to Plaintiff purports to show more assets than liabilities, on information and belief such balance sheet includes false or inflated values which, if corrected, demonstrate that the company's liabilities exceeded is assets.

39. At the time of the Transfers, the Debtor was unable to pay its debts as they came due. Specifically, the Debtor had failed to build adequate reserves necessary to pay down its deferred annuity payment obligations. At the time of the Transfers, Asset Trader had incurred millions of dollars in deferred charitable gift annuity obligations which lacked the means to pay.

40. The Debtor was engaged in business or transactions for which any property remaining with the Debtor was unreasonably small capital. The Debtor was incurring deferred annuity obligations, while at the same time investing donated funds in depreciating assets and paying for the expenses of its principal and his relatives.

41. Asset Trader never established adequate reserves for payment of its annuity obligations. At the time of its bankruptcy filing, Asset Trader had illiquid assets of questionable value and only $3.55 in its bank accounts.

42. The Transfers were made for the benefit of insiders and not in the ordinary course. Maxine March was an employee of the Debtor and, as the mother of its principal and a purported officer and director, was an insider of the Debtor. The payment of Maxine March's legal fees was not in the ordinary course of business.

43. Similarly, Tony March was an employee and insider of the Debtor. The payment of Tony March's legal fees was not in the ordinary course of business.

44. The Cheshire Law Firm knew or should have known that Asset Trader was improperly applying its assets by paying Tony March's personal legal expenses, because the Cheshire Law Firm knew or should have known that Asset Trader was a § 501(c)(3) corporation.

45. The Cheshire Law Firm knew or should have known that it was not providing

legal services to Asset Trader and that any payments received from Asset Trader were avoidable.

46. The Batch Law Firm knew or should have known that Asset Trader was improperly applying its assets by paying Tony March's personal legal expenses, because the Batch Law Firm knew or should have known that Asset Trader was a § 501(c)(3) corporation.

47. The Batch Law Firm knew or should have known that it was not providing legal services to Asset Trader and that any payments received from Asset Trader were avoidable.

48. The Transfers are recoverable for the benefit of the estate.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. For judgment in his favor on behalf of the bankruptcy estate against the Batch Law Firm in the amount of at least $86,937.34, to be proven at trial;

2. For judgment in his favor on behalf of the bankruptcy estate against the Cheshire Law Firm in the amount of at least $14,811.25, to be proven at trial;

3. That the costs of this action be charged to the Defendants, and

4. For such other and further relief as the Court deems just and proper.

DATED: June 8, 2017.

        s/Nicholas C. Brown
Nicholas C. Brown
NC State Bar No.: 38054
Attorneys for the Trustee
Howard, Stallings, From, Hutson,
Atkins, Angell & Davis, P.A.
P.O. Box 12347
Raleigh, North Carolina 27605
Telephone (919) 821-7700
Facsimile (919) 821-7703