UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| In re: <br><br> Asset Trader <br><br> Debtor | Case No. 16-02794-5-DMW <br><br> Chapter 7 |
| James B. Angell, Chapter 7 Trustee for Asset Trader, <br><br> Plaintiff, <br><br> v. <br><br> Michael P. Klein, Chapter 7 Trustee for Rolfe Chester Fred Pope, Case No. 17-14354-MLB (W.D. Wash.) <br><br> And <br><br> Rolfe F. Pope, <br><br> Defendants | Adversary Proceeding No. |

**COMPLAINT TO AVOID FRAUDULENT TRANSFERS AND OBLIGATIONS, DISALLOWANCE OF CLAIM AND SETOFF PURSUANT TO
11 U.S.C. §§ 502(d), 548, 550, 553 AND BANKRUPTCY RULE 3007(b)
ASSERTED SOLELY AS OBJECTION TO AND DEFENSE TO CLAIM NO. 13
(NO AFFIRMATIVE RELIEF REQUESTED)**

NOW COMES James B. Angell, Chapter 7 Trustee for Asset Trader ("Plaintiff" or "Trustee"), complaining of Michael P. Klein, Chapter 7 Trustee for Rolfe Chester Fred Pope, Case No. 17-14354-MLB (W.D. Wash.)("Klein") and Rolfe F. Pope ("Pope")[1], and alleges and says as follows:

**PARTIES AND JURISDICTION**

1. On May 26, 2016 (the "Petition Date"), Asset Trader ("Asset Trader" or "Debtor") filed a Chapter 11 bankruptcy petition in this Court.

2. On September 14, 2016 (the "Conversion Date"), the Debtor's case was converted

---

[1] The claims in this Complaint are being asserted solely as defenses to the claims asserted by Rolfe F. Pope against the Asset Trader bankruptcy estate.

to one under Chapter 7.

3. Plaintiff is the duly appointed Chapter 7 Trustee for the Debtor's bankruptcy case by order of the Court dated September 14, 2016.

4. Asset Trader is a non-profit corporation organized and existing under the laws of the state of North Carolina.

5. On information and belief, Pope is a citizen and resident of the state of Washington.

6. Pope is a debtor in a Chapter 7 bankruptcy case in the Western District of Washington, Case No. 17-14354-MLB.

7. Klein in the duly appointed chapter 7 trustee in Poe's bankruptcy case, Case No. 17-14354-MLB.

8. The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10. This proceeding is a statutorily core proceeding under 28 U.S.C. §157(b)(2)(A),(B),(C), and (H).

11. This Court has constitutional authority to hear and finally determine this proceeding. In the event the Court does not otherwise have constitutional authority, the Trustee consents to this Court's jurisdiction to finally determine this matter.

12. The Trustee does not seek affirmative relief against Pope or Klein. The claims asserted herein are intended solely as defenses to Proof of Claim No. 13 filed by Pope in the above-captioned bankruptcy case. *See* Fed. R. Bankr. P. 3007(b).

## BACKGROUND

13. On information and belief, in or around 2015 Pope established an entity named the Nunca–Nada Irrevocable Trust.

14. Pope designated Anthony Wayne March ("March") as trustee of the Nunca-Nada Irrevocable Trust.

15. On information and belief, on or about May 4, 2005, the Nunca-Nada Irrevocable Trust purchased an annuity from Allianz Life Insurance Company of North America (the "Allianz Annuity").

16. On April 13, 2011, Anthony Wayne March ("March") caused Articles of

Incorporation for a corporation named "Wall Street Estate Planners, Inc." to be filed in the office of the Delaware Secretary of State.

17. According to the Articles of Incorporation for Wall Street Estate Planners, Inc. (herein, "WSEP"), March served as the Chairman and CEO for WSEP.

18. On August 4, 2011, March caused Articles of Incorporation for a nonprofit corporation named "The Caring Canvas Foundation, Inc." to be filed in the office of the North Carolina Secretary of State. The filings in the North Carolina Secretary of State's office show that The Caring Canvas Foundation, Inc. subsequently amended its Articles on October 22, 2012 to change its name to "Caring Canvas, Inc.", and subsequently amended its Articles to change its name to "Caring Canvas" on January 14, 2013 (such corporation is referred to herein as "Caring Canvas").

19. On information and belief, on or about August 24, 2011, WSEP entered into a "Structured CGA Settlement Structure/Legal Offer" (the "WSEP Agreement"), whereby Pope agreed to transfer the Allianz Annuity to a charitable organization managed by WSEP in exchange for a charitable gift annuity, in exchange for which Pope was, generally, to receive a federal charitable tax deduction in the amount of $139,069.15 and annual annuity payments of $27,515.00 over 22.3 years, plus an additional $25,000 payable at the end of every 5 years after August 31, 2012 until death.

20. On or about August 26, 2011, Pope caused the Allianz Annuity to be transferred to WSEP.

21. On February 14, 2012, Caring Canvas issued Pope a Form 8283 stating that Pope had contributed investment funds valued at $431,000 to Caring Canvas on August 26, 2011.

22. On information and belief, March, in his capacity as trustee of the Nunca-Nada Irrevocable Trust, and/or as CEO and Chairman of WSEP, and/or as President and CEO of Caring Canvas misapplied the funds of those entities, including but not limited to the funds contributed by Pope, in order to finance his own business pursuits or his lifestyle.

23. On February 8, 2012, the corporation now known as "Asset Trader"[2] was incorporated by March as a nonprofit corporation under the laws of the state of North Carolina using the name "The CGA Exchange, Inc."

24. On January 14, 2014, Asset Trader filed Articles of Amendment with the North Carolina Secretary of State to change its name from "The CGA Exchange, Inc." to "The CGA Exchange". On November 21, 2014, Asset Trader filed Articles of Amendment with the North Carolina Secretary of State to change its name from "The CGA Exchange, Inc." to "Asset Trader".

25. March was the President and Chief Executive Officer and a director of Asset

---

[2] The corporation now referred to as "Asset Trader" is hereinafter referred to as "Asset Trader", regardless of the name of the corporation at the time in question.

Trader.

26. By letter dated July 10, 2013, the Internal Revenue Service informed Asset Trader that it was determined to be exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code, effective February 8, 2012.

27. On July 11, 2013, March signed a letter agreement on behalf of Asset Trader purporting to update and amend the "current Gift Annuity arrangement" and committing to making certain payments to Pope (the "2013 Agreement").

28. In or around July of 2014, Pope requested written verification of his entitlement to annuity payments.

29. On July 11, 2014, Asset Trader wrote a "To Whom it May Concern" letter stating that Asset Trader "is obligated to pay Mr. Rolfe Pope a monthly Gift Annuity payment of $2,297.97 per month and will be doing so for the rest of Mr. Pope's natural life…" (the 2014 Agreement"; the 2013 Agreement and the 2014 Agreement are jointly referred to herein as the "Assumption Agreements").

30. On information and belief, March, as CEO and Chairman of Asset Trader, made contractual commitments to Pope pursuant to the Assumption Agreements and used the funds of Asset Trader to meet obligations of WSEP and Caring Canvas to Pope in order to avoid personal liability to Pope for his improper use of the funds of the Nunca-Nada Irrevocable Trust, WSIP and/or Caring Canvas.

31. Between December 21, 2012 and March 15, 2016, Asset Trader made payments totaling at least $75,812.61 directly to Pope from its bank account as set out on Exhibit A, attached hereto (the "Transfers").

32. On January 9, 2017, Pope filed an amended proof of claim in the Asset Trader case, asserting a claim based on the WSEP Agreement, as Claim No. 13.

33. On March 23, 2017, the Trustee filed an objection to the Pope proof of claim on the basis that the claim lacked sufficient documentation to substantiate liability of Asset Trader.

34. On September 22, 2017, the Court entered an order overruling the Trustee's objection to claim, "subject to any potential subsequent challenge by the Trustee pursuant to 11 U.S.C. § 548 or any other applicable provision of the United States Bankruptcy Code."

35. On October 3, 2017, Pope filed a petition for relief under chapter 7 of the Bankruptcy Code in the Western District of Washington, commencing Case No. 17-14354-MLB.

36. Pursuant to 11 U.S.C. § 541, Claim No. 13 became property of Pope's bankruptcy estate, subject to Pope's rights to claim exemptions therein (previously or in the future) and the possibility of reversion of the claim to Pope, through abandonment or otherwise.

FIRST CLAIM FOR RELIEF
11 U.S.C. §§ 544, 550; N.C. Gen. Stat § 39-23.1 *et seq.*
(Fraudulent Incurrence of Obligation)
As basis for disallowance of Claim pursuant to 11 U.S.C. § 502(d)

37. Paragraphs 1 through 36 are incorporated herein by reference.

**38. This claim for relief is asserted solely as the basis of an objection to and a defense to Claim No. 13 asserted by Pope against the Asset Trader bankruptcy estate.**

39. The Assumption Agreements constitute obligations incurred by the Debtor. March executed the Assumption Agreements on behalf of Asset Trader f/k/a The CGA Exchange.

40. The Assumption Agreements purport to obligate Asset Trader to pay the amount owed under the WSEP Agreement.

41. The Debtor incurred its obligations under the Assumption Agreements with intent to hinder, delay or defraud creditors of the Debtor.

42. The Debtor's agreement to incur liability to Pope under the Assumption Agreements was part of a larger scheme by March to protect himself and affiliated entities from collection by causing Asset Trader to assume certain of their respective liabilities.

43. As a §501(c)(3) tax-exempt organization, the Debtor obtained donations in exchange for promising annuity payments to donors, often deferring such obligations for seven to ten years.

44. In fact, March relied on new donations to fund liabilities it assumed from March and March-controlled entities, including but not limited to liabilities to Pope assumed by the Debtor under the Assumption Agreements.

45. In addition to using charitable donations to the Debtor to fund his personal and other non-debtor liabilities, March used donated funds to finance his personal expenses and lifestyle.

46. At the same time, the Debtor failed to make appropriate investments necessary to fund its obligations to pay charitable annuity to its donors.

47. Through his scheme, March intended to defraud donors and the Internal Revenue Service.

48. The Debtor assumed the obligation of WSEP and/or Caring Canvas to make annuity payments to Pope although it received nothing of value in exchange for its obligations under the Assumption Agreements.

49. The Debtor did not receive reasonably equivalent value in exchange for assuming the obligation to Pope.

50. At the time of the 2013 Agreement, the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets were unreasonably small in relation to the business or transaction. Soon after its inception, Asset Trader began entering into charitable gift annuity agreements whereby Asset Trader would be responsible for paying deferred income streams to donors.

51. Rather than investing donated contributions in investment grade assets that would appreciate over time, Asset Trader invested in speculative investments, such as gold and stock in Twitter and in depreciable property that was in fact used by its principal and his relatives. Among other things, March caused Asset Trader to purchase luxury and classic cars, including but not limited to a Ferrari, a Dodge Viper, and a Jaguar, and other luxury items of dubious investment value, including a yacht and a jet, which he and/or his relatives used for their personal benefit. Asset Trader also used contributions and donations to pay for the personal expenses of its officers and directors who were also the close friends or relatives of March.

52. The Debtor intended to incur, or believed that it would incur, debts beyond its ability to pay as they became due. The Debtor's "investment strategy" of purchasing depreciable items for the personal use of its officers, together with March's use of corporate monies to fund his personal expenses and lifestyle, rendered the Debtor unable to meet its charitable gift annuity obligations. The Debtor had no realistic prospect of repaying those obligations in light of the Debtor's reliance on new donations to fund old obligations.

53. The Debtor was insolvent at the time of the Assumption Agreements or became insolvent as a result of its obligations set out in the Assumption Agreements. On information and belief, the Debtor's liabilities exceeded its assets at the time of the Assumption Agreements.

54. The Assumption Agreements are voidable and should be avoided as fraudulent obligations under N.C. Gen. Stat. 39-23.1 *et seq.* and 11 U.S.C. §§ 544, 550.

55. The Assumption Agreements are voidable and should be avoided as fraudulent obligations under 11 U.S.C. §§ 548(a)(1) and (2).

56. The Assumption Agreements are the legal basis for Claim No. 13.

57. Claim No. 13 should be disallowed.

SECOND CLAIM FOR RELIEF
11 U.S.C. §§ 544, 548, 550; N.C. Gen. Stat § 39-23.1 *et seq.*
(Fraudulent Transfers)
As basis for disallowance of Claim pursuant to 11 U.S.C. §502(d)

58. Paragraphs 1 through 57 are incorporated herein by reference.

59. **This claim for relief is asserted solely as the basis of an objection to and a defense to Claim No. 13 asserted by Pope against the Asset Trader bankruptcy estate.**

60. The Transfers constitute the transfer of an interest of the Debtor in property. The Debtor transferred such funds from its bank accounts to Pope.

61. The Debtor made the Transfers with actual intent to hinder, delay, or defraud any entity to which the Debtor was or became indebted on or after the date that such Transfers were made.

62. Asset Trader intended to defraud its donors and charitable gift annuitants by misleading them regarding Asset Trader's "charitable" activities and its ability to fund deferred annuities in order to procure their donations. Asset Trader received funds or property from donors in exchange for an unsecured promise to pay a stream of payments to each donor after a deferral period. The deferral period typically ranged from seven to ten years. The donors received a tax-deductible contribution in the amount of the difference between the fair market value of the property contributed and the fair market value of the annuity determined on the date of the contribution.

63. Rather than investing donated contributions in investment grade assets that would appreciate over time, Asset Trader invested in speculative investments, such as gold and stock in Twitter and in depreciable property that was in fact used by its principal and his relatives. Among other things, March caused Asset Trader to purchase luxury and classic cars, including but not limited to a Ferrari, a Dodge Viper, and a Jaguar, and other luxury items of dubious investment value, including a yacht and a jet, which he and/or his relatives used for their personal benefit.

64. Asset Trader also used contributions and donations to pay for the personal expenses of its officers and directors who were also the close friends or relatives of March.

65. Asset Trader did not disclose to the IRS, donors or annuitants that contributions would be used for the purpose of funding an officer's personal expenses and lifestyle and not for any educational purposes.

66. March relied on donations to Asset Trader to fund his trustee obligations, including the Allianz Annuity which became an obligation of WSEP and/or Caring Canvas.

67. The Transfers were part of the Debtor's scheme to defraud the IRS and creditors of Asset Trader. Specifically, Tony March engaged in fraudulent and deceitful conduct by abusing Asset Trader's section 501(c)(3) status in order to receive donations, contributions and other funds which he used for his personal benefit, including to fund his personal obligations and expenses.

68. Despite having raised millions of dollars in tax deductible contributions for its charitable purpose to provide education, from its inception through the Petition Date, the Debtor did not conduct any educational classes for anyone other than its employees. It developed a

facility for teaching classes and purportedly developed training software, neither of which was ever used.

69. Asset Trader did not receive reasonably equivalent value in exchange for the Transfers.

70. The Transfers constituted payments under the Assumption Agreements or other obligations of WSEP and/or Caring Canvas.

71. The Assumption Agreements are avoidable obligations.

72. Although March caused Asset Trader to assume obligations to Pope under the Assumption Agreements, such agreement was not made for reasonably equivalent value and is void.

73. Asset Trader received nothing of value in exchange for making the Transfers.

74. The Transfers were not made in exchange for reasonably equivalent value.

75. Asset Trader was insolvent at the time of each of the Transfers. On information and belief, the value of the company's assets was less than the amount of its liabilities at the time of the Transfers. Although a company balance sheet available to Plaintiff purports to show more assets than liabilities, on information and belief such balance sheet includes false and inflated values which, if corrected, demonstrate that the company's liabilities exceeded is assets.

76. The Debtor made such Transfers without sufficient assets or reserves to meet its obligations, including its charitable gift annuity obligations. The Debtor intentionally diluted its assets in order to cover Tony March's personal debts and to pay for his personal expenses.

77. At the time of the Transfers, the Debtor was unable to pay its debts as they came due. The Debtor failed to build adequate reserves necessary to pay down its deferred annuity payment obligations. Over the course of the Transfers, Asset Trader incurred millions of dollars in deferred charitable gift annuity obligations which it lacked the means to pay.

78. The Debtor was engaged in business or transactions for which any property remaining with the Debtor was unreasonably small capital. The Debtor was investing donated funds in depreciating assets and paying for the obligations and expenses of its principals and relatives.

79. Asset Trader never established adequate reserves for payment of its annuity obligations. At the time of its bankruptcy filing, Asset Trader had illiquid assets of questionable value and only $3.55 in its bank accounts.

80. The Transfers are avoidable and are in fact void as fraudulent transfers under 11 U.S.C. §§ 544, 550 and N.C. Gen. Stat. § 39-23.1 *et seq.*

81. The Transfers are avoidable and are in fact void as fraudulent transfers under 11 U.S.C. §§ 548 and 550

82. Pope and/or Klein is a person from whom property is recoverable under 11 U.S.C. §§ 550 and 553. Specifically, and as asserted hereinabove, the Transfers are avoidable transfers and obligations recoverable for the benefit of the estate.

83. Pope is a transferee of the Transfers which are avoidable under 11 U.S.C. §§ 544 and 548.

84. Pope and/or Klein have not paid the amount of the Transfers or turned over such property for which they are liable under 11 U.S.C. §§ 550 or 553.

85. Therefore, the Pope proof of claim should be disallowed under 11 U.S.C. § 502(d).

THIRD CLAIM FOR RELIEF
11 U.S.C. § 553
(Setoff)
Asserted as Objection to and Defense to Claim

86. Paragraphs 1 through 85 are incorporated herein by reference.

**87. This claim for relief is asserted solely as the basis of an objection to and a defense to Claim No. 13 asserted by Pope against the Asset Trader bankruptcy estate.**

88. Pope and the Debtor have mutual debts which were outstanding on the Petition Date. Specifically, Pope asserts a claim against the Debtor based on the Assumption Agreements, which claim arose prior to the Petition Date. Plaintiff asserts claims against Pope based on the Transfers, which claims arose prior to the Petition Date.

89. To the extent that Claim No. 13 is not otherwise disallowed, the Plaintiff is entitled to a defense in the way of setoff in an amount at least equal to the Transfers under 11 U.S.C. § 553.

90. The Plaintiff seeks no affirmative relief against Pope or Klein to the extent any such set-off may exceed the amount of Claim No. 13.

WHEREFORE, Plaintiff respectfully prays for the following relief:

1. That the purported obligation owed by Asset Trader to Pope as represented by the Assumption Agreements and any related documents be avoided and deemed unenforceable, such that Asset Trader has no liability to Pope or Klein under the Assumption Agreements or otherwise;

2. That Claim No. 13 asserted by Pope in the Asset Trader bankruptcy estate be

disallowed under 11 U.S.C. § 502(d);

3. In the alternative, that the allowable amount of Claim No. 13 be reduced by and set off by amount of the Transfers as a defense to Claim No. 13;

4. That, subject to the automatic stay applicable in the Pope bankruptcy case, the costs of this action be charged to Pope and/or Klein, and

5. For such other and further relief as the Court deems just and proper.

6. Notwithstanding anything herein to the contrary, no affirmative relief is sought as to Pope or Klein other than disallowance of Claim No. 13 or defense to Claim No. 13.

DATED: February 23, 2018.

                                      s/Nicholas C. Brown
James B. Angell
NC State Bar No.: 12844
Nicholas C. Brown
NC State Bar No.: 38054
Attorneys for the Trustee
Howard, Stallings, From, Atkins,
Angell & Davis, P.A.
P.O. Box 12347
Raleigh, North Carolina 27605
Telephone (919) 821-7700
Facsimile (919) 821-7703

EXHIBIT A

| Date | Asset Trader | Rolfe Pope |
|---|---|---|
| 12/21/2012 | 2,292.91 | (2,292.91) |
| 2/19/2013 | 2,292.91 | (2,292.91) |
| 3/22/2013 | 2,292.91 | (2,292.91) |
| 4/23/2013 | 2,307.91 | (2,307.91) |
| 5/29/2013 | 2,307.91 | (2,307.91) |
| 10/7/2013 | 4,585.84 | (4,585.84) |
| 3/26/2014 | 2,292.97 | (2,292.97) |
| 4/28/2014 | 2,292.97 | (2,292.97) |
| 5/30/2014 | 2,292.97 | (2,292.97) |
| 6/26/2014 | 2,297.97 | (2,297.97) |
| 7/25/2014 | 2,297.97 | (2,297.97) |
| 8/27/2014 | 2,297.97 | (2,297.97) |
| 9/26/2014 | 2,297.97 | (2,297.97) |
| 10/27/2014 | 2,297.97 | (2,297.97) |
| 11/26/2014 | 2,297.97 | (2,297.97) |
| 12/22/2014 | 2,297.97 | (2,297.97) |
| 1/16/2015 | 2,297.97 | (2,297.97) |
| 2/19/2015 | 2,297.97 | (2,297.97) |
| 3/17/2015 | 2,297.97 | (2,297.97) |
| 4/16/2015 | 2,297.97 | (2,297.97) |
| 5/15/2015 | 2,297.97 | (2,297.97) |
| 6/15/2015 | 2,297.97 | (2,297.97) |
| 6/17/2015 | 2,297.97 | (2,297.97) |
| 7/17/2015 | 2,297.97 | (2,297.97) |
| 8/15/2015 | 2,297.97 | (2,297.97) |
| 9/16/2015 | 2,297.97 | (2,297.97) |
| 10/15/2015 | 2,297.97 | (2,297.97) |
| 11/15/2015 | 2,297.97 | (2,297.97) |
| 12/15/2015 | 2,297.97 | (2,297.97) |
| 1/15/2016 | 2,297.97 | (2,297.97) |
| 2/16/2016 | 2,297.97 | (2,297.97) |
| 3/15/2016 | 2,297.97 | (2,297.97) |
|  | 75,812.61 |  |